**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

MARK MAGAZU,

              Plaintiff,

   v.

CHILENO BAY FAMILY OFFICE,
LLC, and SHELDON DYCK,

            Defendants.

Civil Action No. 23-4352
(RMB/AMD)

**OPINION**

**APPEARANCES:**

Dante B. Parenti
LAULETTA BIRNBAUM, LLC
591 Mantua Boulevard, Suite 200
Sewell, New Jersey 08080

    *On behalf of Plaintiff Mark Magazu*

Alfred R. Brunetti
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
Morristown, New Jersey 07962

    and

Philip M. Giordano (*pro hac vice*)
REED & GIORDANO, P.A.
One McKinley Square, 6th Floor
Boston, Massachusetts 02109

    *On behalf of Defendants Chileno Bay Family Office, LLC and Sheldon Dyck*

**RENÉE MARIE BUMB, Chief United States District Judge:**

Judges resolve disputes between parties.  That is what we do.  But before a judge may engage in this pursuit, she must first ensure that she possesses the power to act.  Courts refer to this concept as jurisdiction, and it is reflected in a constellation of different doctrines.  To paraphrase the parlance of the hit TV series, *The Crown*, the Court might summarize these jurisdictional principles by reference to the "Three Questions" that it must always ask of itself:  (1) "Is there a case that needs to be decided?"; (2) "Can it be decided by the Court?"; (3) "Must it be decided by the Court, now?"  See *The Crown: Annus Horribilis* (Netflix release Nov. 9, 2022).  If any one of these questions is answered in the negative, then the Court must restrain its judgment.

In this case, Plaintiff Mark Magazu ("**Plaintiff**" or "**Magazu**") has asserted various contract and quasi-contract claims against Defendant Chileno Bay Family Office, LLC ("**CBFO**") and its member-manager, Defendant Sheldon Dyck ("**Dyck**," and collectively with CBFO, "**Defendants**").  Before the Court is Defendants' Motion to Dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), [Docket No. 18], and their Motion to Strike pursuant to Rule 12(f), [Docket No. 19].  The principal question presented is whether CBFO—a nonresident, Delaware limited liability company with a principal place of business in Nevada—and Mr. Dyck—a resident of Cabo San Lucas, Mexico—have purposefully directed their activities at the State of New Jersey such that this Court can exercise specific jurisdiction over them.

1

Having considered the parties' submissions,[1] and resolving the Motions without oral argument, *see* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b), the Court cannot answer all of the "Three Questions" in the affirmative:  because the Court lacks personal jurisdiction over Defendants for the reasons explained herein, the Motion to Dismiss will be **GRANTED**, and the Motion to Strike will be **DENIED**.  This action will be dismissed accordingly.

*     *     *

## I.    FACTUAL BACKGROUND

Defendant CBFO is a wealth manager that caters to high-net-worth individuals. [Compl. ¶ 2, Docket No. 1-2.]  Organized as a Delaware limited liability company, CBFO maintains its principal place of business in Nevada.  [*Id.*; *see also* Defs.' Rule 7.1(a)(2) Disclosure Statement, Docket No. 3.]  Defendant Dyck is the Executive Chairman and sole member-manager of CBFO.[2]  [Compl. ¶ 4.]  He currently resides in Cabo San Lucas, Mexico, previously having resided in Danville, California.  [*Id.*; *see also* Defs.' Rule 7.1(a)(2) Disclosure Statement.]  Plaintiff Magazu is allegedly a

---

[1] The parties' submissions are referred to herein as follows: [Defs.' Mem. Supp. Mot. Dismiss, Docket No. 18-1 ("**Defs.' Br.**"); Pl.'s Mem. Opp'n Mot. Dismiss, Docket No. 20 ("**Pl.'s Opp'n**"); Defs.' Reply Mem. Supp. Mot. Dismiss, Docket No. 23 ("**Defs.' Reply Br.**"); and Defs.' Mem. Supp. Mot. Strike, Docket No. 19-1 ("**Defs.' Strike Br.**")].  Plaintiff has not opposed Defendants' Motion to Strike.  [*See generally* Docket.]

[2] Dyck is also allegedly an advisor of Belpointe Asset Management, LLC. [Compl. ¶ 9.]  As Belpointe is no longer a defendant in this action pursuant to the parties' stipulation, see *infra* Section II, the Court omits any further factual background about this entity.

citizen and resident of Woolwich Township, New Jersey, [Compl. ¶ 1; *see also* Pl.'s Rule 7.1(a)(2) Disclosure Statement, Docket No. 7], though this allegation is disputed in connection with Defendants' Motion to Dismiss, as explained below, see *infra* note 5 & Section IV.A.2.c.

In January 2020, Dyck and Magazu apparently met and "hit it off," eventually deciding that Magazu should join Dyck's company, CBFO.  [Compl. ¶¶ 7–8.]  Magazu does not allege where, or in what manner, they met.  [*See generally* Compl.]  Thereafter, the two discussed Magazu's potential employment for "several weeks."  [*Id.* ¶ 10.]  On January 7, 2021, Magazu alleges that Dyck made him an "offer" of employment via e-mail.  [*Id.*]  The e-mail included an image summarizing Magazu's "potential phase one contribution areas" to serve, as Dyck wrote, as a "starting point" to "further our conversation."  [*Id.* ¶ 11; *see also* Jan. 7, 2021, E-mail from Dyck to Magazu, Compl., Exs. A & B.]  The e-mail also summarized Magazu's proposed "remuneration":  a base salary of $200,000, a bonus of 0.50% of any assets gathered and retained, and initial equity options of 5%, with additional equity of 2–8% per year based on performance.  [Compl. ¶ 12; *see also* Jan. 7, 2021, E-mail from Dyck to Magazu, Compl., Exs. A & B.]  Magazu allegedly accepted this "offer" and began his employment in February 2021.  [Compl. ¶¶ 13–15.]

During his time at CBFO, Magazu allegedly worked on corporate branding, designed marketing and promotional materials, drafted formation and operating documents, and "coordinat[ed] company affairs with outside counsel."  [*Id.* ¶ 18; *see also* Apr. 19, 2021, E-mail from Dyck to Magazu, Compl., Ex. C. (forwarding e-mail

from outside counsel for Magazu's review).]  For instance, Magazu alleges that he paid $73,652.78 out-of-pocket to the Washington, D.C., design agency, Beveridge Seay, on behalf of CBFO for corporate branding services.  [Compl. ¶ 19; *see also* Apr. 14, 2021, Beveridge Seay Invoice, Compl., Ex. D.]  Despite performing these services and repeatedly asking Dyck for an employment contract to memorialize the terms of their arrangement, Magazu never entered into a contract with Dyck.  [*See id.* ¶ 16.]  After seven-and-a-half (7.5) months at CBFO (from February until September of 2021), Magazu alleges that CBFO terminated their relationship.  [*Id.* ¶ 21.]

Magazu was never paid for his work and contends that he is owed $125,000 in unpaid wages.  [*Id.* ¶ 22; *see also* Oct. 26, 2021, Demand Ltr. from Pl.'s Counsel to Dyck, Compl., Ex. E.]  Magazu also alleges that, "Rather than pay Magazu's agreed upon wages, Dyck and CBFO attempted to unilaterally change Magazu's compensation package and offered Magazu approximately $3,000,00 for his 7.5 months with the company."  [Compl. ¶ 24.]

## II.  PROCEDURAL HISTORY

On July 12, 2023, Plaintiff Magazu filed this action in New Jersey Superior Court, asserting state-law claims for breach of contract (Count I), unjust enrichment (Count II), and promissory estoppel (Count III) as well as a violation of the New Jersey Wage Payment Act ("**WPA**"), N.J. Stat Ann. § 34:11-1, *et seq.* (Count IV), against Defendants CBFO, Belpointe Asset Management, LLC ("**Belpointe**"), and Dyck. [Compl. ¶¶ 25–49, Docket No. 1-2.]  On August 11, 2023, Belpointe timely removed

this action pursuant to 28 U.S.C. § 1441(a).  [Notice of Removal ¶ 5, Docket No. 1.]
Belpointe submitted that the Court could exercise subject matter jurisdiction over
Magazu's state-law claims pursuant to 28 U.S.C. § 1332(a).[3]  [*See id.* ¶¶ 2–3.]

On August 16, 2023, Belpointe filed a Rule 12(b)(6) Motion to Dismiss.  [*See*
Docket No. 4-2.]  The Court administratively terminated Belpointe's Motion because
it had failed to comply with Rule I.A of this Court's Individual Rules and Procedures.
[Docket No. 5.]  After Magazu filed a responsive letter, [Docket No. 8], and the
Motion was restored to the Court's active docket, [Docket No. 17], Magazu filed a
Notice of Voluntary Dismissal pursuant to Rule 41(a)(1)(A)(i) as to his claims against
Belpointe.  [Docket No. 21; *see also* Ltr. from Pl.'s Counsel, Docket No. 22.]  Belpointe
was terminated from this action accordingly.  [*See generally* Docket.]

Separately, on September 29, 2023, after an exchange of pre-motion letters,
CBFO and Dyck filed their Motion to Dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(2) and 12(b)(6).  [Docket No. 18.]  In support of their Motion, they
argue that Magazu's claims should be dismissed with prejudice because the Court
lacks personal jurisdiction over them, and they contend that Counts I, III, and IV
should be dismissed, in the alternative, because Magazu has failed to allege sufficient
facts to establish breach of contract, promissory estoppel, and a violation of the WPA.
[*See generally* Defs.' Br.]  Magazu opposes, first contending that the Court can exercise

---

[3] As the parties are completely diverse from one another and the amount in
controversy exceeds $75,000, this Court has no reason to question its subject matter
jurisdiction to adjudicate this dispute.

specific jurisdiction over Defendants because they sent certain e-mails to him while he resided in the State of New Jersey, [Pls.' Br. at 7–10], and then arguing that each of his claims is adequately pleaded, [*id.* at 10–16]. Among other things, Defendants dispute that their e-mails establish the "minimum contacts" necessary for the Court to exercise personal jurisdiction over them. [Defs.' Reply Br. at 2–10.]

In connection with their Motion to Dismiss, Defendants also seek to strike a reference in the Complaint to an "inadmissible settlement communication." [Defs.' Strike Br. at 1.] Magazu alleges that, "Rather than pay [his] agreed upon wages, Dyck and CBFO . . . offered [him] approximately $3,000.00 for his 7.5 months with the company." [Compl. ¶ 24.] Defendants contend that this allegation should be stricken under Rule 12(f) because it represents a confidential communication sent to Magazu in a demand letter under Federal Rule of Evidence 408 as an offer of settlement of this dispute. [Defs.' Strike Br. at 4–6.] Magazu does not oppose Defendants' Motion to Strike. [*See generally* Docket.]

## III.   LEGAL STANDARD

A defendant may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). When reviewing a motion to dismiss under Rule 12(b)(2), courts "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Cateret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). Once the jurisdictional defense is raised, the plaintiff bears the burden of demonstrating the facts to establish personal jurisdiction, *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citing *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144,

150 (3d Cir. 2001)); *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), and the plaintiff "'must prove by affidavit or other competent evidence that jurisdiction is proper,'" *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (cleaned up) (quoting *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).  If the court does not hold an evidentiary hearing, the plaintiff need only present "a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'"  *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434 (3d Cir. 1987)).

## IV.  DISCUSSION

Defendants raise two issues in their Motion to Dismiss pursuant to Rule 12(b)(2) and Rule 12(b)(6):  first, whether Magazu's claims must be dismissed for lack of personal jurisdiction; and second, whether Counts I, III, and IV of the Complaint should be dismissed for failure to plead sufficient facts to satisfy plausibility.  [*See generally* Defs.' Br.]  Separately, they seek to strike paragraph 24 of the Complaint pursuant to Rule 12(f), arguing that it contains an impermissible reference to their confidential offer of settlement.  [*See generally* Defs.' Strike Br.]  As personal jurisdiction is a threshold issue, *Haller v. Usman*, 2022 WL 17131854, at *2 (D.N.J. Nov. 18, 2022), the Court first addresses whether it can exercise jurisdiction over Defendants.

A. **Motion to Dismiss for Lack of Personal Jurisdiction.**

"Under Federal Rule of Civil Procedure 4(k), a District Court typically exercises personal jurisdiction according to the law of the state where it sits." *O'Connor*, 496 F.3d at 316 (citing Fed. R. Civ. P. 4(k)(1)(A)); *see also, e.g.*, *M3 USA Corp. v. Hart*, 516 F. Supp. 3d 476, 489 (E.D. Pa. 2021). Thus, "to exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258–59 (3d Cir. 1998). "First, the court must apply the relevant long-arm statute to see if it permits the exercise of personal jurisdiction; then, the court must apply the precepts of the Due Process Clause of the Constitution." *Id.* at 259. In New Jersey, like in most states, this "two-step inquiry" is collapsed into one because New Jersey's long-arm statute provides for the exercise of personal jurisdiction to the fullest extent of due process. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) ("New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution.") (citations omitted).

The constitutional standard has been rescribed time and time again: a defendant "may be subject to suit consistent with the constitutional guarantee of due process only if he has 'certain minimum contacts with the State such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 257 (3d Cir. 2022) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011)); *see also Ford*

*Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  This standard directs courts to consider the "quality and nature" of the *defendant's* contacts with the forum state to determine whether it is reasonable and fair to require the defendant to proceed with its defense before the forum court.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009) (citation omitted); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Int'l Shoe Co.*, 326 U.S. at 316–17.

"These basic due process principles are reflected in the two recognized types of personal jurisdiction."  *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007); *see also Ford*, 592 U.S. at 358.  Courts may exercise either general or specific jurisdiction. *O'Connor*, 496 F.3d at 317.  Because they are "analytically distinct categories," *id.* at 321, "courts should consider the facts relevant to each category separately" when assessing whether the minimum-contacts standard has been met, *Metcalfe*, 566 F.3d at 334.  The Court thus begins with whether it can exercise general jurisdiction before turning to specific jurisdiction.

### 1.    General Jurisdiction.

"General (or 'all-purpose') jurisdiction permits a court to hear any and all claims against a defendant brought within a certain forum, even if those claims have nothing to do with any actions the defendant took in the forum."  *Ripp*, 49 F.4th at 257 (citing *Goodyear*, 564 U.S. at 919).  The sweeping "breadth" of such jurisdiction imposes one "correlative limit."  *Ford*, 592 U.S. at 358.  The question is whether the defendant's

"affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear*, 564 U.S. at 919); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984); *Int'l Shoe Co.*, 326 U.S. at 317. "Only a limited set of affiliations with a forum will render a defendant amenable to all purpose jurisdiction there." *Daimler*, 571 U.S. at 137. For an individual, the paradigmatic forum for the exercise of general jurisdiction is the individual's place of domicile. *Ripp*, 49 F.4th at 257 (citing *Goodyear*, 564 U.S. at 924). With respect to a corporation, the paradigmatic forum is the place of incorporation and principal place of business. *Daimler*, 571 U.S. at 137 (citation omitted).

Here, Defendants argue that the Court cannot exercise general jurisdiction over them because their contacts with the State of New Jersey have not been so "continuous and systematic" as to render New Jersey their home, [Defs.' Br. at 6–7], and Plaintiff concedes the point, [*see* Pl.'s Opp'n at 7]. As a result, the Court focuses its analysis on whether it can exercise specific jurisdiction over Defendants. *See Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200–01 (3d Cir. 1998) ("[N]o party in this case contends that there is a basis for general jurisdiction in [New Jersey]—so [the Court is] free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction.").[4]

---

[4] In any case, the Court readily agrees with the parties that it cannot exercise general jurisdiction over Defendants. Defendant CBHO is a Delaware limited liability company with its principal place of business in Nevada, [Compl. ¶ 2; *see also* Defs.' Rule 7.1(a)(2) Disclosure Statement], and Defendant Dyck is a resident of Cabo San

## 2.    Specific Jurisdiction.

"Specific" or "case-linked" jurisdiction depends on an affiliation between the forum state and the defendant's "suit-related conduct." *Walden v. Fiore*, 571 U.S. 277, 283–84 & n.6 (2014) (citing *Goodyear*, 564 U.S. at 919). "Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414–15 & n.9). "A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales*, 384 F.3d at 96 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)). But "[t]he contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Accordingly, for a court to exercise specific jurisdiction, three elements must be met. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020); *Marten*, 499 F.3d at 296; *O'Connor*, 496 F.3d at 317. "First, the defendant must

---

Lucas, Mexico, [Compl. ¶ 4; *see also* Defs.' Rule 7.1(a)(2) Disclosure Statement]. There are no allegations in the Complaint establishing any Defendant's "continuous and systematic" contacts with the State of New Jersey, nor is there any discernable suggestion that this is an "exceptional case" where the ordinary domicile / place-of-incorporation / principal-place-of-business rule should be set aside. *See Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 120 (3d Cir. 2017) (noting that in an exceptional case "a corporation's operations in a different forum . . . may be so substantial and of such a nature as to render the corporation at home in that State") (quoting *Daimler*, 571 U.S. at 139 n.19) (cleaned up). Accordingly, this Court cannot exercise general jurisdiction over Defendants. *See Ford*, 592 U.S. at 358–59; *Goodyear*, 564 U.S. at 919.

have purposefully directed its activities at the forum." *Danziger*, 948 F.3d at 129 (cleaned up) (citing *O'Connor*, 496 F.3d at 317); *see also Burger King*, 471 U.S. at 472. "Second, the plaintiff's claims 'must arise out of or relate to' the defendant's activities." *Danziger*, 948 F.3d at 129–30 (quoting *O'Connor*, 496 F.3d at 317); *see also Helicopteros*, 466 U.S. at 414. "And third, exercising personal jurisdiction must not 'offend traditional notions of fair play and substantial justice.'" *Danziger*, 948 F.3d at 130 (quoting *O'Connor*, 496 F.3d at 317); *see also Int'l Shoe Co.*, 326 U.S. at 320.

Here, Defendants contend that Magazu cannot meet any of these elements, [Defs.' Br. at 7–9], and Magazu opposes, [Pl.'s Opp'n at 7–10]. The Court addresses each element in turn.

### a.   Purposeful Availment.

The principal question is whether Defendants "purposefully avail[ed] [themselves] of the privilege of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). While physical presence in the forum state is not required, *IMO Indus.*, 155 F.3d at 259 (citing *Burger King*, 471 U.S. at 476), and a defendant's electronic communications directed at the forum may satisfy this requirement in appropriate circumstances, *Gen Elec. Co.*, 270 F.3d at 151; *see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.") (citations omitted), the defendant's activities ultimately must show that it deliberately targeted the forum state, *O'Connor*,

496 F.3d at 317.  The focus of this bedrock inquiry is not on the defendant's contacts with persons who reside in the forum state, but rather on "the defendant's contacts with the forum State itself."  *Walden*, 571 U.S. at 285.

In a breach of contract case, such as the instant dispute, the "mere existence of a contract is insufficient to establish minimum contacts."  *Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citing *Burger King*, 471 U.S. at 478).  Said differently, "[c]ontracting with a resident of the forum state does not alone justify the existence of personal jurisdiction over a non-resident defendant."  *Mellon Bank (East) PSFS v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1993) (citation omitted).  Rather, courts must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing," to determine whether an exercise of specific jurisdiction is appropriate.  *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001); *see also Burger King*, 471 U.S. at 479 ("It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated.").

Here, Magazu argues that CBFO and Dyck purposefully directed their activities at New Jersey because he allegedly resided in Woolwich Township, New Jersey, during the course of his alleged employment at CBFO.  [Pl.'s Br. at 6–7; Compl. ¶ 1.]  Magazu argues that he was residing in New Jersey when Dyck forwarded him the January 7, 2021, e-mail that Magazu contends to be an "offer" of employment.  [Pl.'s Opp'n at 8; *see also* Magazu Cert. ¶ 3, Docket No. 20-1.]  He also contends that he

resided in New Jersey when he accepted the alleged offer and "began the on-boarding process."  [Pl.'s Opp'n at 8; *see also* Magazu Cert. ¶ 4.]  Ultimately, Magazu argues that he was residing in New Jersey during the entire 7.5-month span of his alleged employment at CBFO.  [Pl.'s Opp'n at 8; *see also* Magazu Cert. ¶¶ 4–8.]

Defendants counter that Magazu's claim of residency is "dubious" because public records show that he has been registered to vote in Texas since December 2021. [Defs.' Br. at 7–8 (citing LexisNexis Voter Registration, Philip Giordano Decl., Ex. A, Docket No. 18-3).]  Assuming *arguendo* that Magazu resided in New Jersey during the course of his relationship with CBHO, Defendants dispute that "isolated e-mails" can establish purposeful availment.  [Defs.' Reply Br. at 5–9.]  Defendants further argue that they have no genuine connection to New Jersey, citing the fact that Dyck does not maintain an office or own any assets, bank accounts, or property in New Jersey, and identifying the fact that Dyck has never met with Magazu in New Jersey. [*See id.* at 9; Sheldon Dyck Aff. ¶¶ 4, 6–7, 10, 12, Docket No. 18–2.]  Defendants urge the Court to conclude that Magazu has failed to establish that they purposefully directed their activities at the state.  [Defs.' Br. at 8.]

Having considered the parties' submissions, the Court must agree with Defendants:  Magazu has not met his burden of demonstrating a prima facie case that the Court can exercise specific jurisdiction because he has failed to show that Defendants' activities deliberately targeted New Jersey.  *See O'Connor*, 496 F.3d at 317. Even assuming that Magazu resided in New Jersey from January 2021 until September 2021, [Magazu Cert. ¶¶ 3–5], as the Court does for the purpose of deciding Defendants'

Motion to Dismiss, *see Danziger*, 948 F.3d at 129 (explaining that court must take plaintiff's factual allegations as true and resolve all doubts in plaintiff's favor, if it does not hold evidentiary hearing on personal jurisdiction),[5] the Court cannot predicate its exercise of personal jurisdiction over Defendants, without more, on the alleged existence of a contractual relationship between the parties. *See Budget Blinds*, 536 F.3d at 261 ("The mere existence of a contract is insufficient to establish minimum contacts.") (citing *Burger King*, 471 U.S. at 478); *DiVeronica Bros.*, 983 F.2d at 557 ("Contracting with a resident of the forum state does not alone justify the existence of personal jurisdiction over a non-resident defendant.") (citing *Farino*, 960 F.2d at 1222). Ultimately, Magazu has not supplied the grounds to conclude that the parties "envisioned continuing and wide-reaching contacts" in New Jersey. *Burger King*, 471 U.S. at 479–80.

Unlike the plaintiff in *Burger King*, Magazu has not identified a single term of the parties' "contract" that contemplated any dealings in the State of New Jersey. *See Burger King*, 471 U.S. at 482 (noting that a choice of law provision, for example, if combined with other factors, could reinforce the conclusion of a party's "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation

---

[5] As a result, the Court does not consider whether Plaintiff was, in fact, residing in Texas between January and September 2021, or whether he became a Texas resident at some point thereafter, or whether he has been a Texas resident since December 2021, as Defendants appear to claim, [*see* LexisNexis Voter Registration, Giordano Decl. (dated Sept. 29, 2023), Ex. A (identifying that Magazu registered to vote in Texas on Dec. 30, 2021, and his status is listed as "active" as of the date the exhibit was prepared); Dyck Aff. ¶ 13 ("According to my understanding, the Plaintiff does not currently reside in New Jersey.") (dated Sept. 28, 2023)].

there"). This is, perhaps, because Magazu and Defendants never memorialized their arrangement in a written contract. [*See* Compl. ¶ 16.] But even assuming that the parties validly entered into an oral contract or a contract implied from the parties' conduct, Magazu has not identified any provisions detailing any activity that was expected to occur within the state. As a result, the Court cannot determine whether this factor—the terms of the parties' contract—weighs in favor of finding purposeful availment.

Marred by the lack of a textual indication of targeted activity, Magazu instead relies on the more general assertion that "formation" and "performance" occurred while he resided in New Jersey. [Pl.'s Opp'n at 8.] He points to Dyck's January 7, 2021, e-mail that summarized his "potential phase one contribution areas." [*Id.*; *see also* Jan. 7, 2021, E-mail from Dyck to Magazu, Compl., Exs. A & B.] The Court also considers Dyck's April 19, 2021, e-mail to Magazu seeking his review of an analysis prepared by outside counsel. [Compl. ¶ 18; *see also* Apr. 19, 2021, E-mail from Dyck to Magazu, Compl., Ex. C.] This assertion is flimsy for two reasons.

First, Magazu has not alleged, or introduced by competent evidence, that Defendants were aware that he resided in New Jersey during the course of his performance of the alleged contract. Magazu's unilateral affiliation with the forum state cannot ground this Court's exercise of specific jurisdiction over non-resident defendants, *i.e.*, CBFO and Dyck. *See Walden*, 571 U.S. at 285 ("[T]he plaintiff cannot be the only link between the defendant and the forum."); *Hanson*, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident

defendant cannot satisfy the requirement of contact with the forum State."); *see also, e.g.*, *Croat v. Mission Fine Wines, Inc.*, 2020 WL 1921955, at *4 (D.N.J. Apr. 21, 2020) (concluding that court could not exercise specific jurisdiction over nonresident employer based on plaintiff-employee's personal choice to work remotely at residence in New Jersey—"[t]hese were unilateral decisions by [employee] and not the result of deliberate direction or requirement by [employer]").  Defendants must have been aware, at least, that they were engaging with a New Jersey resident for this Court to conclude that they enjoyed the privilege of conducting their activities within the forum state.  *Cf. Farino*, 960 F.2d at 1223 (upholding jurisdiction over nonresident defendants who had knowingly approached Pennsylvania bank to borrow money, stating that the defendants "were all well aware, or should have been, that they were dealing with a Pennsylvania bank"); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 65–66 (3d Cir. 1984) ("What is required . . . is actual evidence that, by entering into the contract, the particular defendant could foresee impact within [New Jersey].").  This was not the case here.

Second, Defendants' two e-mails to Magazu are insufficient indications of purposeful activity targeting the state.  *See Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (explaining that, without more, "informational communications in furtherance of a contract between a resident and a nonresident does [sic] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant") (cleaned up) (citation omitted); *M3 USA Corp.*, 516 F. Supp. 3d at 492 (explaining that "infrequent

or minimal communication" between the parties will not establish 'minimum contacts') (citation omitted).   Defendants' e-mails fail to contain any specific connection to New Jersey and, even after taking all factual circumstances into account, fail to demonstrate the sort of "entangling contacts" that the court in *Remick* found to be comparable to the cases distinguished in *Vetrotex*.[6]  *See Remick*, 238 F.3d at 256 (identifying as jurisdictionally relevant that defendant sought out plaintiff by calling him at his Philadelphia office, that executed agreement was returned to plaintiff's office, that at least one payment was sent to plaintiff's office, and "informal communications" occurred *repeatedly* between the parties during their relationship). These additional allegations, absent from this action, are revealing by comparison.

For instance, unlike the distinguished cases in *Vetrotex*, there are no allegations here that Dyck specifically identified Magazu in New Jersey as a promising employment prospect.  *See Vetrotex*, 75 F.3d at 152 ("[T]his is not a case where the defendant solicited the contract or initiated the business relationship leading up to the contract.") (citing *Farino*, 960 F.2d at 1217).  Rather, the parties met in an unspecified location in January 2020 where they apparently "hit it off." [Compl. ¶¶ 7–8.]  Nor are there allegations identifying a significant exchange of electronic correspondence

---

[6] There, the court acknowledged that personal jurisdiction could arise from a nonresident defendant's contract with a forum resident in certain circumstances, such as (1) "where the defendant solicited the contract or initiated the business relationship leading up to the contract"; (2) "where the defendant sent any payments to the plaintiff in the forum state"; and (3) "where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state."  *Vetrotex*, 75 F.3d at 152–53 (citations omitted).

18

between Dyck and Magazu, followed by in-person negotiations in New Jersey. *See Carteret Savings Bank*, 954 F.2d at 147–48 (holding that telephone calls and correspondence sent into New Jersey from Louisiana, coupled by a meeting in New Jersey to close a loan transaction, provided the minimum contacts necessary). Indeed, the parties never met in New Jersey, at any point. [*See* Dyck Aff. ¶ 12; *see also* Compl. ¶¶ 7–24.] Finally, and perhaps most revealing, the Court discerns none of the allegations that were sufficient in *M3 USA Corp.*, a case involving personal jurisdiction over a remote employee during the COVID-19 Pandemic, to conclude that a New Jersey-based employee had the requisite contacts with Pennsylvania. *See M3 USA Corp.*, 516 F. Supp. 3d at 493–94 (noting that company began managing its business from Pennsylvania headquarters in 2016, that remote employee based in New Jersey visited headquarters three or four times per year, that employee had received a key fob in 2020 to access headquarters, and that employee serviced accounts of clients located across the country, not just in New Jersey).

Where, as here, the only tie to the forum state is Magazu's residence and two e-mails arguably supporting Magazu's contract and quasi-contract claims, the Court cannot conclude that Defendants purposefully directed their activities at New Jersey. *See, e.g.*, *Team First Consulting, LLC v. Hangliter*, 2007 WL 1302440, at *6 (D.N.J. Apr. 27, 2007) (holding that court lacked personal jurisdiction over defendants at to contract claims because assertion of jurisdiction premised entirely on communications related to agreement). Accordingly, the Court concludes that Magazu has not established that Defendants' contacts with New Jersey were sufficient to conclude that Defendants

"purposefully avail[ed] [themselves] of the privilege of conducting activities within [New Jersey]." *Hanson*, 357 U.S. at 253.

### b.   Relatedness.

Having concluded that Defendants did not purposefully direct their activities at New Jersey, the Court only briefly addresses relatedness. "Whether a plaintiff's claims 'arise out of or relate to' the defendant's contacts with the forum state depends, in part, on the type of claim brought." *Danziger*, 948 F.3d at 130 (citing *O'Connor*, 496 F.3d at 317). In a case involving contract claims, as here, the Third Circuit has "effectively required" the plaintiff to satisfy the "restrictive standard" of proximate causation or "substantive relevance." *O'Connor*, 496 F.3d at 320. This standard can be summarized as follows: "The defendant's contacts with the forum must have been *instrumental* in either the formation of the contract or its breach." *Danziger*, 948 F.3d at 130 (cleaned up) (citing *Gen. Elec. Co.*, 270 F.3d at 150).

Here, Magazu contends that he can satisfy the relatedness requirement because all of his communications with Dyck occurred while Magazu resided in New Jersey, including his employment for, and subsequent termination by, CBHO. [Pl.'s Opp'n at 9.] Defendants essentially reiterate their argument regarding purposeful availment, asserting that they had insufficient contacts with New Jersey for the Court to exercise personal jurisdiction. [Defs.' Br. at 8–9.] Having reviewed the parties' arguments, the Court determines that Magazu has not met his burden of showing that Defendants' contacts with New Jersey were "instrumental" in the formation or breach of the parties' alleged contract. *See Danziger*, 948 F.3d at 130. This is so, largely, for the

reasons articulated above:  there are no allegations that Defendants knew that Magazu resided in New Jersey, and Defendants' two e-mails relating to the parties' contract are insufficient to show that Defendants deliberately targeted the state.  Therefore, the Court cannot conclude that Magazu's claims "ar[ose] out of or relate[d] to" Defendants' contacts.  *See O'Connor*, 496 F.3d at 317.

### c.    Fair Play and Substantial Justice.

Finally, the Court briefly considers whether exercising personal jurisdiction over Defendants would comport with traditional notions of fair play and substantial justice. *See Danziger*, 948 F.3d at 130; *Int'l Shoe Co.*, 326 U.S. at 320.  "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477).  Of course, the inverse is equally true:  the absence of minimum contacts renders any exercise of personal jurisdiction over the defendants presumptively unconstitutional.  *See id.*  Jurisdictional reasonableness is assessed by weighing several factors, among them "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotation marks and citation omitted).

Here, having determined that Defendants lack sufficient contacts with the State of New Jersey, the Court also concludes that exercising personal jurisdiction over them would be plainly unreasonable.  CBHO is a Delaware limited liability company with its principal place of business in Nevada, [Compl. ¶ 2; *see also* Defs.' Rule 7.1(a)(2) Disclosure Statement], and Defendant Dyck, its sole member, is a resident of Cabo San Lucas, Mexico, [Compl. ¶ 4; *see also* Defs.' Rule 7.1(a)(2) Disclosure Statement]. Neither Defendant has any physical presence in New Jersey.  [Dyck Aff. ¶¶ 4–11.]  As noted above, Magazu has not alleged, or introduced by any competent evidence, that Defendants were even aware that he resided in New Jersey.  See *supra* § IV.A.2.a. Though Magazu attests that CBHO "claimed places of business with employee representatives in Wisconsin, Washington, Philadelphia, and Mexico" and that he "was considered the employee representative for the Philadelphia place of business due to [his] New Jersey residence" nearby, [Magazu Cert. ¶ 7], he has failed to show that CBHO or Magazu had some related connection to New Jersey as a result of their purported "mobile employer" status.  Without sufficient contacts, the burden of litigating this dispute in New Jersey is high, especially where alternative fora in the United States and Mexico are available to Magazu.  While Magazu may prefer to resolve this action in New Jersey, "[d]ue process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs." *Walden*, 571 U.S. at 284.  Accordingly, the Court finds that exercising personal jurisdiction over Defendants would offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co.*, 326 U.S. at 320.

Therefore, the Court will grant Defendants' Motion to Dismiss for lack of jurisdiction and decline to consider whether Magazu's claims are plausibly alleged.

**B.     Motion to Strike.**

Defendants have also moved to strike paragraph 24 of the Complaint pursuant to Federal Rule of Civil Procedure 12(f) because it contains, in their view, an impermissible reference to a confidential offer of settlement under Federal Rule of Evidence 408.  [*See generally* Defs.' Strike Br.]  The Motion to Strike is unopposed.  [*See generally* Docket.]

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The decision to do so is within the court's sound discretion.  *Newborn Bros. Co. v. Albion Eng'g Co.*, 299 F.R.D. 90, 94 (D.N.J. 2014) (citations omitted); *Zaloga v. Provident Life & Acc. Ins. Co. of Am.*, 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) (citations omitted).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters."  *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002).

Still, a motion to strike is a drastic remedy that is highly disfavored.  *Paramount Residential Mortg. Grp., Inc. v. Nationwide Mortg. Bankers, Inc.*, 2023 WL 3736385, at *7 (D.N.J. May 31, 2023).  As a result, motions to strike "will generally 'be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.' "  *Garlanger v. Verbeke*, 223

F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting *Tonka Corp. v. Rose Art Indus., Inc.*, 836 F. Supp. 200, 217 (D.N.J. 1993)).

Here, the Court will deny Defendants' Motion to Strike because it will grant its Motion to Dismiss for lack of personal jurisdiction.  As Magazu's claims will be dismissed, the Court need not address whether paragraph 24 of the Complaint contains an impermissible reference to an offer of settlement.  *See, e.g.*, *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 330 (E.D. Pa. 2022) ("The Court need not rule on [the defendant's] Motion to Strike because its Motion to Dismiss is being granted.").

## V.   CONCLUSION

For the reasons expressed above, Defendants' Motion to Dismiss will be **GRANTED**, and Plaintiff's claims will be **DISMISSED**, **WITHOUT PREJUDICE**, for lack of personal jurisdiction.  *See Aldossari ex rel. Aldossari v. Ripp*, 49 F.4th 236, 262 (3d Cir. 2022) (explaining that a dismissal for lack of jurisdiction should be without prejudice as the court has not expressed a view of the plaintiff's claims on the merits). In so holding, the Court declines to consider *sua sponte*[7] whether to transfer this action because Magazu may refile his claims in another forum that possesses personal jurisdiction over Defendants.  *See Danziger*, 948 F.3d at 132–33 (explaining that, if a plaintiff may refile its case in a proper forum, "the interests of justice" do not demand

---

[7] None of the parties asked the Court to transfer this action to another forum should it agree that it lacks personal jurisdiction over Defendants.  [*See generally* Defs.' Br.; Pl.'s Opp'n.]

transfer).  Finally, Defendants' Motion to Strike will be **DENIED**.  An accompanying

Order shall issue separately.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

DATED:  **April 9, 2024**